UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                    |   |                              |
|------------------------------------|---|------------------------------|
| AMERICAN CENTER FOR LAW AND JUSTICE, ) | |                              |
| Plaintiff,                         ) | |                              |
| v.                                 ) | | Case No. 17-cv-01866 (APM)   |
| U.S. DEPARTMENT OF JUSTICE,        ) | |                              |
| Defendant.                         ) | |                              |

## MEMORANDUM OPINION

### I. INTRODUCTION

Four months before the 2016 presidential election, on June 27, 2016, former President Bill Clinton met with then Attorney General Loretta Lynch on board an airplane parked on the tarmac at a Phoenix airport. The meeting prompted speculation and attacks from critics as to whether the two had discussed the Department of Justice's investigation into Democratic nominee and former Secretary of State Hillary Clinton's email practices.

This Freedom of Information Act ("FOIA") suit concerns records generated in the wake of the June 2016 meeting. Plaintiff American Center for Law and Justice submitted a FOIA request to the FBI seeking a variety of records related to the Clinton-Lynch meeting. What remains of this case is quite narrow. At issue are Defendant Department of Justice's redaction of two records under FOIA Exemptions 6 and 7(C) and Exemption 5, respectively. For the reasons that follow, the court concludes that the redactions are proper and enters judgment in favor of Defendant.

## II. BACKGROUND

### A. Factual Background

On July 15, 2016, Plaintiff American Center for Law and Justice submitted a FOIA request to the Federal Bureau of Investigation ("FBI"), a component of Defendant Department of Justice. Compl., ECF No. 1, Ex. A, ECF No. 1-1. Plaintiff sought "any and all records pertaining to Attorney General Loretta Lynch's meeting with former President Bill Clinton on June 27, 2016, which occurred on her airplane at the Sky Harbor International Airport in Phoenix, Arizona." *Id.* at 1, 9, 17. On October 21, 2016, the FBI answered Plaintiff's FOIA request, reporting that it had not located any responsive records. Compl., Ex. C, ECF No. 1-3.

On August 10, 2017, however, the FBI reopened Plaintiff's FOIA request and informed Plaintiff that it had found potentially responsive records. Def.'s Mot. for Summ. J., ECF No. 14 [hereinafter Def.'s Mot.], Decl. of David M. Hardy, ECF No. 14-2 [hereinafter Hardy Decl.], ¶ 13. One month later, Plaintiff filed the action before the court, alleging that Defendant had improperly withheld records by failing to respond to Plaintiff's FOIA request. *See generally* Compl. On November 30, 2017, Defendant produced 29 pages of responsive records to Plaintiff. Joint Status Report, ECF No. 12, at 1. While the FBI released some pages in full, it withheld information found on other pages pursuant to FOIA Exemptions 5, 6, and 7(C). *Id.*; Hardy Decl. ¶ 16.

### B. Procedural Background

Following Defendant's production, both parties moved for summary judgment. Defendant argued that the FBI had conducted an adequate search and that its withholdings were proper. *See generally* Def.'s Mot. at 1. In support of its motion, Defendant submitted a declaration from David M. Hardy, the Section Chief of the FBI's Record/Information Dissemination Section. Hardy Decl.

¶ 1. Hardy described the FBI's searches for responsive records, *id.* ¶¶ 17–21, and the FBI's justifications for its withholdings, *id.* ¶¶ 22–48.

Plaintiff challenged the adequacy of the agency's search and several of Defendant's withholdings. *See* Pl.'s Cross-Mot. for Summ. J. & Mem. in Opp'n to Def.'s Mot., ECF No. 16 [hereinafter Pl.'s Mot.], at 5–14. Specifically, Plaintiff argued that the FBI improperly asserted Exemptions 6 and 7(C) to withhold FBI employees' names and contact information in two pages of released emails. *See id.* at 7–12 (citing Def.'s Mot., Hardy Decl., Ex. H, ECF No. 14-2 [hereinafter Disclosures], at FBI-7, FBI-12). Additionally, Plaintiff argued that the FBI improperly asserted Exemption 5 to withhold talking points contained within released emails. *See id.* at 7, 12–14 (citing Disclosures at FBI-2–3, FBI-23–24). Defendant subsequently conducted additional searches and released 18 additional pages, prompting Plaintiff to drop its challenge to the adequacy of the search. Joint Status Report, ECF No. 21 [hereinafter JSR], at 1–2; Def.'s Reply in Further Supp. of Def.'s Mot. & Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 22 [hereinafter Def.'s Reply], Third Decl. of David M. Hardy, ECF No. 22-2 [hereinafter Third Hardy Decl.], ¶¶ 2, 4–5. Plaintiff also dropped one of its initial claims regarding a withholding made under Exemptions 6 and 7(C), and it did not challenge any of the FBI's new withholdings. Pl.'s Reply in Supp. of Cross-Mot., ECF No. 24 [hereinafter Pl.'s Reply], at 1–2.

What remains of this dispute is quite limited. The parties' cross-motions concern only redactions of two disclosed records—one withholding under Exemptions 6 and 7(C) and one under Exemption 5.

### III. LEGAL STANDARD

Most FOIA cases are properly resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment

must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

FOIA "requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 401 (D.C. Cir. 2017) (internal quotation marks omitted). To that end, when someone challenges an agency withholding, "FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

To prevail in a FOIA action, an agency must demonstrate the adequacy of its search for relevant documents and show that the withheld material falls within one of nine statutory exemptions. *Cable News Network, Inc. v. FBI*, 293 F. Supp. 3d 59, 68 (D.D.C. 2018). Further, "[e]ven when an exemption applies, the agency is obligated to disclose '[a]ny reasonably segregable portion of a record' after removing the exempt material." *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 62 (D.C. Cir. 2018) (second alteration in original) (quoting 5 U.S.C. § 552(b)). To satisfy its burden, an agency may "submit[ ] affidavits that 'describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (quoting *Larson v. Dep't of State*,

565 F.3d 857, 862 (D.C. Cir. 2009)); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (stating that agency affidavits must be "relatively detailed and non-conclusory, and submitted in good faith" (cleaned up)).

## IV. DISCUSSION

As noted, the parties' dispute relates to two withholdings. *See* Pl.'s Reply at 1–2. The first concerns Defendant's redaction of the names of three recipients of an email under Exemptions 6 and 7(C). *See* Disclosures at FBI-12. The second is to Defendant's redaction of media talking points circulated by the director of DOJ's Office of Public Affairs pursuant to Exemption 5. The talking points appear twice in the record. *See id.* at FBI-2–3, FBI-23–24.

### A. Exemptions 6 and 7(C)

The court begins with Plaintiff's challenge to Defendant's withholding of names of three FBI employees who received an email forwarded by Shirlethia Franklin in the Office of the Attorney General regarding the scheduling of a conference call about the Clinton-Lynch meeting. *See* Disclosures at FBI-12. Defendant's declarant, Hardy, states that the redacted names are those of "FBI Special Agents . . . and support personnel who were responsible for receiving, reviewing, analyzing, supervising and/or conducting the day-to-day operations of the FBI reflected in the responsive documents." Hardy Decl. ¶ 30.

Defendant withheld the names pursuant to Exemptions 6 and Exemption 7(C), *id.*, which both concern the privacy interests of individuals identified in agency records, *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993). Under Exemption 6, agencies may withhold "personnel and medical files and similar files" if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). By comparison, Exemption 7(C) contains "broader" privacy language. *See Reporters Comm. for Freedom of Press*, 489 U.S.

at 756. An agency may withhold under Exemption 7(C) "records or information compiled for law enforcement purposes" if the disclosure of that information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Therefore, Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). Courts tasked with evaluating withholdings made pursuant to both statutory exemptions generally look first to the agency's justification under Exemption 7(C), because information properly withheld under Exemption 7(C) would also be covered by Exemption 6. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (explaining the relationship between the two exemptions); *see also Braga v. FBI*, 910 F. Supp. 2d 258, 267–68 (D.D.C. 2012). This court will do the same.

Defendant's reliance on Exemption 7(C) can be disposed of quickly. "To determine whether records are compiled for law enforcement purposes, [the D.C. Circuit] has long emphasized that the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (internal quotation marks omitted). "To meet the agency's burden using declarations, the declarations must establish a connection between the assertedly exempt records and an inquiry into a possible security risk or violation of federal law." *Id.* (internal quotation marks and citation omitted). Here, Defendant's declarant has not established that the email in question—labeled FBI-12—was "compiled for law enforcement purposes." Hardy broadly states that documents containing 7(C) withholdings "were compiled in the course of the FBI's investigation of (1) a potential breach in law enforcement related security protocol concerning the security detail of the Attorney General; or (2) compiled in the course of an ongoing FBI sensitive law enforcement and national security investigation." Third

6

Hardy Decl. ¶ 17. But he does not make a specific statement as to why FBI-12 was created for such purposes. Nor are any of the law enforcement purposes Hardy describes obvious from the face of FBI-12. The email references a conference call; in context, it appears that the purpose of that call is related to a media inquiry regarding the Clinton-Lynch meeting. *See* Disclosures at FBI-12–13. In short, Defendant has not carried its burden of making a connection between the email and an enforcement proceeding. Exemption 7(C) therefore does not apply.

The court proceeds to analyze Defendant's withholdings under Exemption 6. To determine whether a withholding under Exemption 6 is proper, the court "balance[s] the private interest involved (namely, the individual's right of privacy) against the public interest (namely . . . to open agency action to the light of public scrutiny)." *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) (internal quotation marks omitted). A court must begin by determining "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (internal quotation marks omitted). If there is a substantial privacy interest at stake, the court then balances the privacy right against the public's interest in disclosure. *Id.*

Defendant's declarant, Hardy, gives three reasons why the individuals in this case have a substantial privacy interest in their names. *See* Hardy Decl. ¶ 30. First, Hardy states that because the individuals are privy to information regarding investigations, they "may become targets of harassing inquiries for unauthorized access to information regarding such investigations if their identities were released." *Id*. Second, public disclosure of the individuals' investigative assignments, which may occur through publicizing their names, "may seriously prejudice their effectiveness in conducting other investigations." *See id*. Third, disclosure of their identities would open the door to "unnecessary, unofficial questioning" of the individuals regarding the

7

investigation or their work, including, for example, from a target of an investigation who carries a grudge. *Id.* Additionally, Hardy notes that all FBI employees have Top Secret clearances that allow them to access classified and other sensitive information and therefore, as a matter of course, the FBI protects the names and identifying information of their "lower ranking employees" in an effort to spare them from harassment, recruitment, or retribution. *Id.* ¶ 33. Plaintiff counters that Defendant's asserted privacy interest is merely "a general explanation" for the withholdings, but it does not actually take issue with the specific privacy concerns identified by Hardy. *See* Pl.'s Reply at 3. Based on Hardy's declaration, the court finds that the individuals' privacy interest in the non-disclosure of their names is substantial. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (recognizing that individuals, in some contexts, have a privacy interest in their names); *see also Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 200 (D.D.C. 2016) (recognizing a privacy interest in the names of agency employees).

The countervailing public interest is, at best, a marginal one. Plaintiff argues that the significant public interest in the Clinton-Lynch meeting translates into a public interest in the "identities of the individuals who participated in the FBI communications." Pl.'s Mot. at 11. Not so. Plaintiff provides no support for its conclusory statement, nor does it find support in the law. "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (cleaned up). Disclosing the names at issue would accomplish neither objective.

Accordingly, the court concludes that Defendant's withholding of the three names on FBI-12 under Exemption 6 was proper.

B.     **Exemption 5**

Next, Plaintiff challenges Defendant's withholding under Exemption 5 of talking points drafted by Melanie Newman of DOJ's Office of Public Affairs concerning the Clinton-Lynch meeting. *See* Disclosures at FBI-2–3, FBI-23–24.[1] Defendant asserts that the talking points are protected by the deliberative process privilege.

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Among the privileges covered by Exemption 5 is the deliberative process privilege. To qualify for the privilege, withheld material must be "predecisional" and "deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Material is "predecisional" if it is "generated before the adoption of an agency policy." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). Material is "deliberative" if it "reflects the give-and-take of the consultative process." *Id*. Examples of materials protected by the deliberative process privilege include "advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted).

Defendant asserts that the talking points are both predecisional and deliberative. Specifically, Hardy states that the records are predecisional because they "were drafted before and in preparation for communications with the press and public" about the Clinton-Lynch meeting, and deliberative because "they were intended to facilitate or assist in the development of the Department of Justice's responses to inquiries about that meeting." Def.'s Mot. at 8. Plaintiff

---

[1] Although Plaintiff is challenging two emails containing the talking points, the withheld information is the same in both records. *Compare* Disclosures at FBI-2–3, *with id.* at FBI-23–24.

9

responds that the talking points are not "deliberative," as they are the "final" version of the talking points and do not contain preliminary assessments. Pl.'s Mot. at 12–13. Relatedly, seizing on Defendant's acknowledgment that the talking points contain facts, Plaintiff argues that, at a minimum, Defendant must segregate and disclose all facts contained within the talking points. *Id.* at 13 & n. 5; Pl.'s Reply at 2.

Before turning to these arguments, the court notes that Judge Kelly recently ruled in a related matter between these very same parties that the email at issue in this case is protected from disclosure by the deliberative process privilege. *See Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, No. 16-2188 (TJK), 2018 WL 4283561, at *7–9 (D.D.C. Sept. 7, 2018). *Compare* Disclosures at FBI-23–24 (email from R. Quinn to M. Newman et al., June 29, 2016, 4:55 p.m.), *with Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, No. 16-2188 (TJK), Pl.'s Cross-Mot. for Summ. J. & Mem. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 23, Ex. A, ECF No. 23-2, at 26–27 (same).[2] Neither party—inexplicably—brought Judge Kelly's decision to this court's attention. In any event, for the reasons that follow, the court concurs with Judge Kelly's conclusion.

Predecisional documents include those "generated as part of a continuous process of agency decision making, viz., how to respond to on-going inquires." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010). Accordingly, "courts have generally found that documents created in anticipation of press inquiries are protected." *Protect Democracy Project, Inc. v. U.S. Dep't of Defense*, No. 17-cv-00842, 2018 WL 3995884, at *9 (D.D.C. Aug. 21, 2018); *accord Am. Ctr. for Law & Justice*, 2018 WL 4283561, at *6 (observing

---

[2] Plaintiff filed the related action against the Department of Justice on November 2, 2016, challenging the Department of Justice's response to a FOIA request that is nearly identical to the one directed to the FBI at issue here. Compl. ¶ 23; Answer, ECF No. 10, ¶ 23.

10

that "the overwhelming consensus among judges in this District is that the privilege protects agency deliberations about public statements, including the use of talking points") (citing cases). The talking points in this case can fairly be categorized as predecisional because they were "drafted before and in preparation for communications with the press and public" and are "a critical aspect of the decision-making process." Hardy Decl. ¶¶ 41–42. The withheld material also qualifies as deliberative in that the talking points "reflect the drafters' opinions and analyses on specific topics and focus on how to best . . . respond to questions on these topics from the Defendant's perspective." *Id*. ¶ 44. Thus, the withheld talking points are protected from disclosure under Exemption 5.

Plaintiff's contention that these are "final" talking points, and therefore not predecisional, is unconvincing. As Judge Kelly succinctly explained in rejecting the same "finality" argument:

> This argument fails to appreciate the nature of talking points generally and the particular context surrounding the June 28 talking points.[3] Talking points are typically documents prepared by government employees for the consideration of government decision-makers. There may be some circumstances where "talking points" are intended by agency decisionmakers to be followed literally such that they, in and of themselves, represent the agency's decision about what to say. But the "final" version of talking points prepared by more junior staffers for a more senior official is rarely the final decision about what the senior official will say. Rather, a senior official . . . may elect to use all, some, or none of the talking points prepared for her. Perhaps to the chagrin of their junior staffers, senior officials have a tendency to improvise. And even when senior officials do follow their talking points, they often do not recite the points word-for-word.

*Am. Ctr. for Law & Justice*, 2018 WL 4283561, at *8 (cleaned up). The talking points at issue here illustrate these realities. Melanie Newman, the Director of the Department of Justice's Office of Public Affairs, forwarded the talking points to colleagues at the FBI. One of them in turn shared

---

[3] Although the particular "June 28 talking points" referenced in Judge Kelly's decision appear to be different than the talking points at issue in this case, the points made by Judge Kelly apply with equal force here.

the talking points with, among others, then Director James Comey and then Deputy Director Andrew McCabe. *See* Disclosures at FBI-2. Thus, placed in context, these talking points are no more than "advice from subordinates" to senior officials, who may or may not rely upon them if asked to comment to the press. *Id.* In that sense, they qualify as predecisional.

Finally, Plaintiff's segregation argument bears no fruit. As a general matter, "[p]urely factual material usually cannot be withheld under Exemption 5 unless it reflects an 'exercise of discretion and judgment calls.'" *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting *Mapother*, 3 F.3d at 1539). Therefore, whether an agency's withholding under the privilege was justified "does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather, whether the selection or organization of facts is part of an agency's deliberative process." *Id*.

After reviewing the withheld material *in camera*, *see* Minute Order, Sept. 7, 2018, the court finds that the factual information contained in the talking points cannot be segregated from the deliberative process of creating them. Hardy accurately characterizes the talking points as a "selection of facts and source material." Hardy Decl. ¶ 44. These facts are thus "inextricably intertwined" with Defendant's deliberations because their disclosure would reveal the factual information that agency personnel decided to emphasize in response to media inquiries. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *Protect Democracy Project*, 2018 WL 3995884, at *8 (concluding as to talking points that, "[e]ven if many of the documents summarize and collate facts rather than propose conclusions, the decision to include or exclude certain factual information in or from analytical documents is itself an important part of the deliberative process") (alteration and internal quotation marks omitted). In other words, the process of sifting the facts in this case cannot be separated from the facts themselves. *See Am. Ctr. for Law & Justice*, 2018 WL 4283561,

at *10 ("[R]eleasing 'factual' material from talking points would almost inevitably reveal the agency's deliberations on how to present those facts."). The factual contents of the talking points therefore are not segregable. Defendant properly withheld them in full.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Cross-Motion for Summary Judgment is denied. A final, appealable order accompanies this Memorandum Opinion.

Dated: September 19, 2018

Amit P. Mehta
United States District Judge